IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

Karen J. MacDonald,

Plaintiff,

v.                                        Case No. 14-2446-JTM

Carolyn W. Colvin,
Acting Commissioner of Social Security,

Defendant.

**MEMORANDUM AND ORDER**

Plaintiff Karen J. MacDonald seeks review of a final decision by defendant, the Commissioner of Social Security ("Commissioner"), denying her application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Title II of the Social Security Act ("the Act"). Plaintiff alleges that the Commissioner erred in denying DIB because the Administrative Law Judge ("ALJ") failed to properly determine her residual functional capacity ("RFC") and failed to establish that she is capable of performing jobs that exist in the national economy. As discussed below, the Commissioner's decision is reversed and remanded.

**I. Background**

Plaintiff applied for DIB and supplemental SSI in August 2011. She alleged disability beginning February 27, 2011, caused by panic attacks, irritable bowel syndrome ("IBS"), gastroesophageal reflux disorder ("GERD"), allergies, and fibromyalgia. The state agency and the Social Security Administration denied plaintiff's

applications initially and upon reconsideration. Pursuant to plaintiff's request, an ALJ held a hearing on November 19, 2013.

The ALJ issued his decision on April 25, 2014, finding that plaintiff was not disabled within the meaning of the Act. The ALJ determined that plaintiff had the severe impairments of degenerative disc disease, fibromyalgia, cubital tunnel syndrome, major depressive disorder, and anxiety. He then determined that plaintiff did not have an impairment or combination of impairments that meets or medically exceeds the severity of an impairment listed in 20 CFR Part 404, Subpart P, App'x 1. The ALJ further found that plaintiff retained the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). The ALJ determined that plaintiff can: sit for 6 out of 8 hours; stand and walk for 6 out of 8 hours in combination; lift, carry, push, and pull 10 pounds frequently and up to 20 pounds occasionally; never climb ladders, ropes, or scaffolding; occasionally climb stairs or ramps, stoop, kneel, crouch, and crawl; never perform repetitive grasping of objects with her hands; frequently finger bilaterally; and never be exposed to extreme cold, vibration, or hazards. The ALJ further determined that plaintiff should never be expected to understand, remember, or carry out detailed instruction; that her job duties must be simple, repetitive, and routine in nature; and that she should never be expected to exercise independent judgment in her job duties.

The ALJ determined that plaintiff is incapable of performing past work, but that she can perform jobs that exist in significant numbers in the national economy. The ALJ relied on testimony from a Vocational Expert ("VE"), who noted that plaintiff could perform the job duties of a weight recorder, router, or folding machine operator as

described in the Dictionary of Occupational Titles ("DOT"). The ALJ thus concluded that plaintiff was not disabled under the Act.

The Appeals Council denied plaintiff's request for review, making the ALJ's decision the Commissioner's final decision for purposes of judicial review.

## II. Legal Standard

This court reviews the ALJ's decision under 42 U.S.C. § 405(g) to "determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." *Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003). Substantial evidence is that which "a reasonable mind might accept as adequate to support a conclusion." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010) (citation omitted). "Substantial evidence requires more than a scintilla but less than a preponderance." *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004) (citation omitted). The court's role is not to "reweigh the evidence or substitute its judgment for the Commissioner's." *Cowan v. Astrue*, 552 F.3d 1182, 1185 (10th Cir. 2008). The possibility that two inconsistent conclusions may be drawn from the evidence does not preclude a finding that the Commissioner's decision was based on substantial evidence. *Zoltanski*, 372 F.3d at 1200.

An individual is under a disability only if she can "establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months." *Brennan v. Astrue*, 501 F. Supp. 2d 1303, 1306-07 (D. Kan. 2007) (citing 42 U.S.C. § 423(d)). This impairment "must be severe enough that she is unable to

perform her past relevant work, and further cannot engage in other substantial gainful work existing in the national economy, considering her age, education, and work experience." *Barkley v. Astrue*, 2010 WL 3001753, at *2 (D. Kan. July 28, 2010) (citing *Barnhart v. Walton*, 535 U.S. 212, 217-22 (2002)).

Pursuant to the Act, the Social Security Administration has prescribed a five-step sequential analysis to determine whether disability existed between the time of claimed onset and the date the claimant was last insured under the Act. *Wilson*, 602 F.3d at 1139; 20 C.F.R. § 404.1520(a)(4). If the trier of fact finds at any point during the five steps that the claimant is disabled or not disabled, the analysis stops. *Reyes v. Bowen*, 845 F.2d 242, 243 (10th Cir. 1988). The first three steps require the Commissioner to assess: (1) whether the claimant has engaged in substantial gainful activity since the onset of the alleged disability; (2) whether the claimant has a medically severe impairment or combination of impairments; and (3) whether the severity of those impairments meets or equals a listed impairment. *Wilson*, 602 F.3d at 1139 (citing *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)). If the impairments do not meet or equal a designated listing in step three, the Commissioner then assesses the claimant's RFC based on all medical and other evidence in the record. 20 C.F.R. § 404.1520(e). RFC is the claimant's ability "to do physical and mental work activities on a sustained basis despite limitations from her impairments." *Barkley*, 2010 U.S. Dist. LEXIS 76220, at *5; *see also* 20 C.F.R. §§ 404.1520(e), 404.1545. "RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the *most*." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996) (emphasis in original).  The Commissioner then proceeds to step four, where the RFC

assessment is used to determine whether the claimant can perform past relevant work. *Lax*, 489 F.3d at 1084; 20 C.F.R. § 404.1520(e). The claimant bears the burden in steps one through four of proving disability that prevents performance of her past relevant work. 42 U.S.C. § 423(d)(5)(A); *Lax*, 489 F.3d at 1084.

If a claimant meets the burdens of steps one through four, "the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient RFC to perform work in the national economy, given her age, education, and work experience." *Lax*, 489 F.3d at 1084 (brackets omitted).

### III. Analysis

Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence because he (1) improperly weighed medical opinions, (2) improperly weighed the third-party statement of her son, James Wilson, (3) improperly determined plaintiff's credibility, and (4) failed to consider plaintiff's non-severe impairments. Plaintiff further argues that the ALJ improperly relied on the VE testimony at step five of the analysis regarding jobs that plaintiff could perform in the national economy.

**A. The ALJ's RFC determination is supported by substantial evidence.**

The ALJ determines RFC by evaluating a claimant's impairments that are "demonstrable by medically acceptable clinical and laboratory diagnostic techniques," then weighing evidence to determine the nature and severity of those impairments. 20 C.F.R. §§ 404.1527(a), 416.927(a). Such evidence may include medical opinions, other opinions, and a claimant's subjective complaints. *Id.*; *see also Poppa v. Astrue*, 569 F.3d 1167, 1170-71 (10th Cir. 2009).

_1. The ALJ properly weighed medical opinions._

Plaintiff argues that the ALJ improperly weighed the medical opinions of Todd A. Schemmel, Ph.D.; Lauren A. Cohen, Ph.D.; R.E. Schulman, Ph.D; and Jason Neufeld, Ph.D. She further argues that the opinions of Drs. Cohen and Schulman should receive no weight and are not substantial evidence because they are not treating physicians.

Statements from physicians are considered "medical opinions" for the RFC determination. _Id._ A treating physician's statement is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques." _Robinson v. Barnhart_, 366 F.3d 1078, 1082 (10th Cir. 2004) (quoting SSR 96-2p, 1996 WL 374188, at *2 (July 2, 1996)). If the treating physician's statement is not well-supported or is otherwise inconsistent with substantial evidence on record, then it is not entitled to controlling weight and is weighed as any other medical opinion. _Id._

Medical opinions are weighed by evaluating all relevant factors including: (1) an opinion source who examined the claimant is generally given more weight than one who has not; (2) an opinion source who treated the claimant is generally given more weight than one who has not; (3) the length, nature, and extent of any examining or treatment relationship; (4) whether the opinion source presents supporting evidence, such as medical signs and laboratory results; (5) how well the source explains the opinion; (6) whether the opinion is consistent with the record; (7) whether the source has specialty related to the claimant's impairments; and (8) all other relevant factors of which the ALJ is aware that may bear on what weight should be given to a medical opinion. 20 C.F.R. §§ 404.1527, 416.927; _see Knight ex rel P.K. Colvin_, 756 F.3d 1171, 1176-

77 (10th Cir. 2014). "[T]he ALJ must give good reasons in the notice of determination or decision for the weight he ultimately assigns the opinion." *Knight ex rel P.K.*, 756 F.3d at 1177 (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003)).

*a. The ALJ reasonably weighed Dr. Schemmel's opinion.*

Dr. Schemmel performed a consultative exam on plaintiff on January 20, 2012. (Dkt. 8-9, at 132-35). The ALJ noted Dr. Schemmel's findings of major depressive disorder and a Global Assessment Functioning score of 45. The ALJ detailed that Dr. Schemmel observed that plaintiff possessed adequate judgment and insight, average intelligence, and intact memory and concentration; that she interacted with family; and that she appeared anxious and sad, negative and pessimistic, and vented about stressors. The ALJ then noted that, despite plaintiff's performance on mental status tasks, Dr. Schemmel found that her level of distress would preclude work; specifically, that plaintiff would not be able to understand and follow simple instructions.

The ALJ then noted that Dr. Schemmel's opinion was given little weight because he only examined plaintiff on one occasion and the opinion is inconsistent with the overall evidence in the record. The latter is discussed at length in the ALJ's decision, including Dr. Neufeld's examinations finding that plaintiff can perform unskilled work. The ALJ thus identified two specific factors on which he reasonably relied in weighing Dr. Schemmel's opinion, providing good reason in his notice of decision for granting it little weight.[1]

_____

[1] Contrary to plaintiff's argument, an examining physician's opinion is not automatically granted greater weight than a non-examining opinion. While such opinions are *generally*

*b. The ALJ reasonably weighed other medical opinions.*

State agency psychological consultants Dr. Cohen and Dr. Schulman each provided an opinion after reviewing plaintiff's records. (Dkt. 8-5, at 4-14, 37). Both opined, *inter alia*, that plaintiff is capable of performing unskilled light work, but that she may have difficulty interacting with the public. The ALJ noted that their opinions that plaintiff is capable of performing unskilled work received significant weight, then noted that their opinions that plaintiff may have difficulty interacting with the public is inconsistent with other medical evidence and deserved less weight, which resulted in partial weight given to their opinions. Both conclusions are supported by the record and are adequate explanations of the weight given to the opinions of Dr. Cohen and Dr. Schulman.

Dr. Neufeld examined plaintiff on two occasions. On September 24, 2012, Dr. Neufeld noted that his examination of plaintiff could not confirm the presence of psychological defects that would preclude plaintiff from performing unskilled work in any employment setting. (Dkt. 8-9, at 207). The ALJ granted this opinion significant weight because it is consistent with other evidence in the record. On March 7, 2014, Dr. Neufeld again examined plaintiff and noted that the examination could not confirm psychological difficulties that would prevent plaintiff from performing unskilled work, and further noted that she could appropriately interact with coworkers and the public. (Dkt. 8-9, at 472). Following the second examination, Dr. Neufeld submitted a Medical

---

granted greater weight than those of non-examining physicians, they must nevertheless be weighed under the rubric of 20 C.F.R. §§ 404.1527, 416.927. *See Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012).

Source Statement (Mental) reflecting his findings. (Dkt. 8-9, at 476).  The ALJ detailed Dr. Neufeld's second examination and granted significant weight to his finding that plaintiff can perform unskilled work because it is consistent with other evidence. These weights are thus properly explained by factors listed in 20 C.F.R. §§ 404.1527, 416.927. The ALJ granted less weight to the portion of Dr. Neufeld's second MSS opining that plaintiff only has mild limitations in her ability to understand and remember complex instructions, citing only that the opinion is inconsistent with the ALJ's finding. The ALJ's narrative could be understood to mean that the second MSS is inconsistent with other evidence in the record, but does not clearly state so. Nevertheless, the reduced weight given to this opinion favors plaintiff and any error associated therewith is harmless; remand on this issue would not alter the outcome of the determination. The court should not reverse for error that "would lead to warrantless remands needlessly prolonging administrative proceedings." *Wall v. Astrue*, 561 F.3d 1048, 1069 (10th Cir. 2009).

Plaintiff argues that the ALJ erred in weighing portions of each doctor's opinion differently. She cites *Robinson v. Barnhardt* for the proposition that such weighing is improper "picking-and-choosing" by the ALJ. 366 F.3d 1078, 1083 (10th Cir. 2004). However, *Robinson* is distinguishable because it addressed an ALJ decision that failed to discuss any relevant weighing factors to explain why a treating physician's opinion received less than controlling weight. *Id.* The Tenth Circuit concluded that the ALJ may not simply pick and choose from the opinion, but must explain how he assessed the weight of the opinion. *Id.* Contrary to plaintiff's argument, an ALJ may grant greater

weight to certain portions of the same opinion if, as here, proper explanation is provided. *See, e.g.*, *Hackett v. Barnhart*, 395 F.3d 1168, 1174 (10th Cir. 2005).

### 2. The ALJ reasonably weighed James Wilson's third-party statement.

Plaintiff argues that the ALJ erred in granting only slight weight to the statement of her son, James Wilson. In contrast with "medical sources," relatives are "[o]ther non-medical sources" for determining a claimant's RFC. 20 C.F.R. § 404.1513(d)(4). The factors for evaluating medical opinions can also be used to evaluate other, non-medical opinions – such as Wilson's. SSR 06-03p, 2006 WL 2329939, at *4-5 (Aug. 9, 2006).

The ALJ determined that Wilson is not medically trained, his opinion is inconsistent with the other evidence in the record, and that the nature of his relationship to plaintiff renders his opinion less reliable because of affection and a natural tendency to agree with plaintiff. The ALJ thus reasonably weighed Wilson's statement according to the factors set forth in 20 C.F.R. §§ 404.1527, 416.927.

### 3. The ALJ reasonably determined plaintiff's credibility.

A claimant's subjective complaints of debilitating pain are evaluated for credibility under a three-step analysis that asks:

> "(1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether the impairment is reasonably expected to produce some pain of the sort alleged (what we term a "loose nexus"); and (3) if so, whether, considering all the evidence, both objective and subjective, the claimant's pain was in fact disabling."

*Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166-67 (10th Cir. 2012) (citing *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987)). The ALJ "must consider the entire case record, including the objective medical evidence" to determine whether plaintiff's subjective

claims of debilitating pain are credible. SSR 96-7p, 1996 WL 374186, at *1. The ALJ should consider "a claimant's persistent attempts to find relief for her pain and her willingness to try any treatment prescribed," regularity of contact with her doctor, possible psychological disorders that may combine with physical problems, daily activities, and daily dosage and effectiveness of medications. *Keyes-Zachary*, 695 F.3d at 1167.

The ALJ need not make a "formalistic factor-by-factor recitation of the evidence" if he specifies evidence relied on in the credibility analysis. *Id.* (citing *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000)). "[A] credibility determination 'must contain specific reasons for the finding on credibility, supported by the evidence in the case record' and be 'sufficiently specific' to inform subsequent reviewers of both the weight the ALJ gave to a claimant's statements and the reasons for that weight." *Hayden v. Barnhart*, 374 F.3d 986, 992 (10th Cir. 2004) (quoting SSR 96-7p, 1996 WL 374186, at *4).

Here, the ALJ specified that plaintiff's subjective complaints were only partially credible because they are inconsistent with objective medical evidence and plaintiff's reported activities. The ALJ noted the following regarding objective medical evidence that is inconsistent with plaintiff's alleged limitations. Medical imaging and physical exams show no significant skeletal abnormalities and only a small disk bulge and facet hypertrophy. (Dkt. 8-9, at 8, 26, 38, 179). Plaintiff showed improvement with physical therapy. (Dkt. 8-9, at 196). On September 8, 2012, plaintiff exhibited mild difficulty squatting, arising from a sitting position, and getting on and off the examination table, but no difficulty walking or hopping. (Dkt. 8-9, at 198). Despite claims of worsening

11

fibromyalgia pain, plaintiff has not exhibited acute distress during treatment visits. Plaintiff's gait and muscle strength and tone are normal. No treating physician has opined that she is disabled.

Plaintiff further alleges significant pain and limitation in her hands related to carpal tunnel syndrome, but has not sought surgical intervention for the condition. Plaintiff's strength and dexterity testing performance exceeds her claimed limitations. The ALJ did not entirely discredit this allegation, and accounted for it with appropriate limitations for light work limited to "frequent, but not constant, fingering bilaterally." (Dkt. 8-4, at 20).

The ALJ also found the following evidence inconsistent with plaintiff's claimed mental limitations. Plaintiff consistently demonstrated no deficiency in memory, intelligence, or abstracting abilities during mental status examinations. (Dkt. 8-9, at 168, 265, 415, 423). Her counseling sessions document problems coping with stressors and family conflict, but no indication of psychotic condition. *Id.* The record indicates significant periods of time when plaintiff did not seek mental treatment.

The ALJ also noted that plaintiff's reported activities are inconsistent with total disability. She reported to her treating providers that she does light work at home. (Dkt. 8-9, at 419). Plaintiff also reported that she attends to her personal care, prepares simple meals, does dishes and laundry, and shops at stores. (Dkt. 8-8, at 45-47).

The ALJ concluded that the above evidence conflicted with plaintiff's subjective testimony that her pain and mental condition cause debilitating limitations, rendering plaintiff's testimony only partially credible. The ALJ's credibility determination is

supported by substantial evidence in the record; a reasonable mind could conclude that plaintiff's claims of debilitating limitation are only partially credible.

    *4. The ALJ's RFC is supported by substantial evidence.*

    Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence because it did not expressly address plaintiff's non-severe impairments of IBD, GERD, allergies, and uterine fibroids. However, failure to provide detailed analysis of each non-severe impairment will not undermine an RFC determination that is otherwise supported by substantial evidence. *See Wells v. Colvin*, 727 F.3d 1061, 1065-66 (10th Cir. 2013).

    Here, the RFC determination is supported by substantial evidence that is detailed over the span of 8 pages in the ALJ decision. The ALJ identified, in detail, objective medical evidence, both physical and mental, plaintiff's complaints and credibility, third-party opinions, and medical opinions relied on in determining plaintiff's RFC. Further, the ALJ noted his consideration of all evidence in the record in making that determination. The RFC is supported by substantial evidence in the record and is not undermined by the absence of detailed non-severe impairment analysis.

**B. The ALJ failed to properly determine that plaintiff is capable of performing work.**

    If a claimant meets the burdens of steps one through four, "the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient RFC to perform work in the national economy, given her age, education, and work experience." *Lax*, 489 F.3d at 1084 (brackets omitted). At step five, the ALJ may rely on a VE's testimony in determining whether a claimant is disabled if the ALJ's findings

about plaintiff's limitations are reflected in the hypothetical propounded to the VE. SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000); *see Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996). The ALJ should resolve any apparent conflict between evidence provided by the VE and similar occupational information in the DOT. SSR 00-4p, 2000 WL 1898704, at *2. Failure to resolve such conflicts requires a reversal and remand. *Hackett*, 395 F.3d at 1176.

The ALJ propounded his hypothetical to the VE, specifically noting that "[m]entally, she should never be expected to understand, remember, or carry out detailed instructions." (Dkt. 8-4, at 55). The ALJ's hypothetical to the VE thus accurately portrayed plaintiff's mental limitations. The VE responded by describing three occupations available in significant numbers in the national economy that plaintiff can perform: weight recorder (DOT 222.387-074), router (DOT 222.587-038), and folding machine operator (DOT 208.685-014). All three occupations require Reasoning Level 2 or 3. Reasoning Level 2 is defined as ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions."  DOT App'x C, 1991 WL 688702. Reasoning Level 3 is the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and "[d]eal with problems involving several concrete variables in or from standardized situations." *Id.*

Here, a conflict exists between the VE testimony and the DOT. The hypothetical propounded to the VE expressly excluded occupations requiring execution of detailed instructions. Yet, all occupations recommended by the VE – and relied on by the ALJ –

14

require at least the reasoning capability to carry out detailed instructions. This conflict must be explained by the ALJ.

In *Hackett*, the Tenth Circuit reversed and remanded step five of an ALJ's denial of DIB where the plaintiff's limitations seemed to conflict with the reasoning level of jobs recommended by the VE. 395 F.3d at 1176. Here, the plaintiff's limitations are in direct conflict with requirements of the occupations recommended by the VE. Such conflict must be explained.

The ALJ also precluded plaintiff from performing repetitive grasping of objects with both hands. Plaintiff argues further error in reliance on the VE testimony because the suggested occupations are unskilled, light jobs. Citing SSR 83-14, plaintiff argues that unskilled light jobs "require gross use of the hands to grasp." 1983 WL 31254, at *4. In so arguing, plaintiff misrepresents SSR 83-14, which states that "[u]nlike unskilled sedentary work, *many* unskilled light jobs do not entail fine use of the fingers. Rather, they require gross use of the hands to grasp, hold, and turn objects." *Id.* (emphasis added). Here, the occupations presented by the VE do not require grasping as they are described in the DOT. There is no apparent conflict between plaintiff's physical limitations and the evidence presented by the VE.

The ALJ's decision is thus reversed and remanded for further explanation regarding plaintiff's mental limitations at step five because of the conflict between the VE testimony and the DOT.

IT IS ACCORDINGLY ORDERED this 20th day of July, 2015, that the Commissioner's decision is REVERSED and remanded for reconsideration consistent with this opinion.

s\ J. Thomas Marten
J. THOMAS MARTEN, JUDGE